UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------------X

MICHELE LANHAM,                                    Civil Action No.:
                                                   19-CV-00024-AKH

                              Plaintiff,

              -against-

LUMENIS, INC.,

                              Defendant.

-------------------------------------------------------------------------------X

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION PURSUANT TO FED. R. CIV. P. 12(c)**

---

Law Offices of Yale Pollack, P.C.
*Attorneys for Plaintiff*
66 Split Rock Road
Syosset, New York 11791
(516) 634-6340

Of Counsel:
Yale Pollack, Esq.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................... 1

SUMMARY OF RELEVANT FACTS ......................................................................................... 2

STANDARD OF REVIEW ............................................................................................................ 8

ARGUMENTS................................................................................................................................ 8

      POINT I .............................................................................................................................8

      THE COURT SHOULD NOT TAKE JUDICIAL NOTICE OF THE
      DOCUMENTS SUBMITTED BY DEFENDANT ON ITS MOTION BECAUSE
      THEIR AUTHENTICITY IS CALLED INTO QUESTION

      POINT II ..........................................................................................................................10

      THE COMPLAINT ALLEGES THAT DEFENDANT EXERTED SUFFICIENT
      CONTROL OVER MS. LANHAM TO ESTABLISH AN EMPLOYMENT
      RELATIONSHIP

      POINT III..........................................................................................................................13

      THE COMPLAINT ALLEGES PLAUSBILE CLAIMS FOR
      RELIEF UNDER THE NYSHRL

      POINT IV..........................................................................................................................17

      THE COMPLAINT ALLEGES PLAUSBILE CLAIMS FOR
      RELIEF UNDER THE NYCHRL

CONCLUSION................................................................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. Possible Prods., Inc.*,
336 F. Supp.3d 187 (S.D.N.Y. 2018) ................................................................................. 20

*Alfano v. Costello*,
294 F.3d 365 (2d Cir. 2002) ............................................................................................... 15

*Banks v. Corr. Servs. Corp.*,
475 F. Supp.2d 189 (E.D.N.Y. 2007) ................................................................................. 12

*Bermudez v. City of New York*,
783 F. Supp.2d 560 (S.D.N.Y. 2011) ............................................................................ 15, 19

*Chen-Oster v. Goldman, Sachs & Co.*,
251 F. Supp.3d 579 (S.D.N.Y. 2017) ................................................................................. 18

*Chin v. CH2M Hill Companies, Ltd.*,
2012 WL 4473293 (S.D.N.Y. Sept. 28, 2012) ............................................................... 18-19

*Curto v. Medical World Comm., Inc.*,
388 F. Supp.2d 101 (E.D.N.Y.2005) .................................................................................. 14

*Duffy v. Drake Beam Morin*,
1998 WL 252063 (S.D.N.Y. May 19, 1998) ....................................................................... 17

*Eisenberg v. Advance Relocation & Storage, Inc.*,
237 F.3d 111 (2d Cir. 2000) ............................................................................................... 11

*Forrest v. Jewish Guild for the Blind*,
3 N.Y.3d 295 (N.Y. 2004) .................................................................................................. 15

*Fowler v. Scores Holding Co.*,
677 F. Supp.2d 673 (S.D.N.Y. 2009) ............................................................................ 11, 12

*Garcia v. New York City Health & Hosps. Corp.*,
2016 WL 4097850 (S.D.N.Y. July 26, 2016) ..................................................................... 19

*Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC*,
470 F. Supp. 2d 345 (S.D.N.Y. 2007) ........................................................................... 13, 18

*Johnson v. Rowley*,
569 F.3d 40 (2d Cir. 2009) ................................................................................................... 8

*Salvatore v. KLM Royal Dutch Airlines*,
1999 WL 796172 (S.D.N.Y. Sept. 30, 1999) ............................................................................. 17

*Scott v. Massachusetts Mut. Life Ins. Co.*,
86 N.Y.2d 429 (N.Y. 1995) ........................................................................................................ 12

*Vangas v. Montefiore Med. Ctr.*,
823 F.3d 174 (2d Cir. 2016) ....................................................................................................... 17

*Walker v. Sankhi*,
494 F. App'x 140 (2d Cir. 2012) ................................................................................................. 8

*Winston v. Verizon Servs. Corp.*,
633 F. Supp.2d 42 (S.D.N.Y. 2009) ........................................................................................... 17

## Statutes

Fed. R. Evid. 201 ........................................................................................................................ 8

CPLR 214(2) ............................................................................................................................... 11

N.Y. Exec. Law § 296 ................................................................................................................. 11

N.Y. Exec. Law § 296-d ............................................................................................................. 11

N.Y.C. Admin. Code § 8-102 ................................................................................................ 11, 12

N.Y.C. Admin. Code § 8–502(d) ............................................................................................... 11

N.Y. Lab. Law § 201-g ............................................................................................................... 16

## PRELIMINARY STATEMENT

Plaintiff, Michele Lanham, respectfully submits this memorandum of law in opposition to Defendant, Lumenis, Inc.'s ("Defendant"), motion to dismiss, pursuant to Fed. R. Civ. P. 12(c).[1]

Defendant's motion asks that this Court to determine, on the pleadings, that Ms. Lanham was an independent contractor as a matter of law and, based on such determination, dismiss the case for failing to assert a plausible claim for harassment under the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL").

Defendant's fatally flawed motion must be denied for a number of reasons.  Most importantly, the Complaint alleges more than enough facts to maintain jurisdiction under the NYSHRL and NYCHRL as Ms. Lanham alleges that she is a New York City resident who felt the impact of Defendant's discriminatory and retaliatory conduct in New York City.  Ms. Lanham alleges that she endured severe and pervasive conduct in New York City, including receiving a picture of an erect penis from one of Defendant's employees with comments about how he "really want[]s to have sex with [her]," "always wanted to fuck [her]"; was "really horny guy for [her]" and other lewd comments.  Ms. Lanham also was constantly told by one of Defendant's managers about how he needed sex and blowjobs to get through a day, who threatened Ms. Lanham that he could always remove her as Defendant's recruiter if she reported his comments to Defendant.  When Ms. Lanham ultimately complained about the conduct to which she was subjected, less placements were given to her.  When she filed a complaint in court, Defendant terminated Ms. Lanham.  These facts all support discrimination, sexual harassment and retaliation claims under the NYSHRL and NYCHRL.

Furthermore, sufficient facts are alleged in the Complaint to support that Defendant

---

[1] Defendant does not annex its Answer to its motion to dismiss on the pleadings.

1

exercised sufficient control of Ms. Lanham during the course of their relationship for her to be deemed an employee of the company. Defendant takes great liberties in requesting the Court to take judicial notice of documents that form the basis of its motion to support that Ms. Lanham was an independent contractor of Defendant. The documents submitted by Defendant to support its motion are not subject to judicial notice because their authenticity and relevance is called into question. In any event, none of the documents relied upon by Defendant establish, as a matter of law, that Ms. Lanham was an independent contractor of Defendant, an issue ripe for discovery.

Assuming, *arguendo*, that Ms. Lanham was not an employee of Defendant, she is not without recourse because the NYSHRL and NYCHRL were both amended to cover non-employees as of April and May 2018, respectively, and conduct is alleged to have occurred after those dates for Ms. Lanham to maintain cognizable claims under the statutes after they were expanded as alleged in the Complaint.

For the reasons set forth herein, Defendant's motion must be denied.

## SUMMARY OF RELEVANT FACTS

Defendant is a global corporation that conducts business in New York. *Complaint, ¶¶17-20.* Defendant has employees that work and sell its services in New York City (a fact admitted in its Answer). *Id., ¶17.*[2]

**A.      Ms. Lanham's Employment with Defendant**

Ms. Lanham was a recruiter for Defendant from 2011 until her unlawful termination in December 2018. *Complaint, ¶¶1-2, 21, 162.* When working for Defendant, Ms. Lanham primarily performed her duties in New York City. *Id., ¶13.* As the relationship progressed, Defendant

---

[2] Judicial notice can be taken of the fact that "Lumenis" has been sued on numerous occasions in this Court and elsewhere in New York, and has even sued as a plaintiff in this Court in the case of *Lumenis, Inc. v. Altus Medical, Inc.*, 01-CV-09085-LTS.

exerted control over the manner and means in which Ms. Lanham performed her tasks. For example, Defendant called Ms. Lanham in New York City while she was preparing for Christmas to advise her that it needed position filled immediately and that Ms. Lanham must stop whatever she was doing for the holiday to address Defendant's need. *Id., ¶¶25-28*. On other occasions, Ms. Lanham was required to work on weekends, holidays and late nights to perform the tasks requested of her by Defendant to make certain placements. *Id., ¶¶29-30*.

Defendant demanded that Ms. Lanham provide it with weekly reports on the candidates she was providing to Defendant, along with the progress for openings, and she was reprimanded if she failed to provide such reports. *Complaint, ¶¶31-32*. Defendant also expected Ms. Lanham to be available whenever it had a question about a candidate being sought, whether it was before, after, or even during an interview of the candidate, as well as being required to know when each manager was going to interview a candidate. *Id., ¶¶33-34*. Defendant even directed Ms. Lanham to train its employees, such as what to look for in candidates and how to sell candidates on Defendant's business. *Id., ¶35*. As well, Ms. Lanham was required to conduct phone interviews of candidates Defendant found on its own and report back to Defendant of her thoughts on the candidate. *Id., ¶36*.

In addition, Defendant paid for Ms. Lanham to attend functions for its employees, such as its National Sales and Quarterly Company Management Meeting. *Complaint, ¶¶37-38*. While at the meetings, Ms. Lanham was expected to participate and train with upper management while there. *Id., ¶39*.

**B.    Defendant's Discrimination and Sexual Harassment of Ms. Lanham**

Throughout her relationship with Defendant, Ms. Lanham was treated less favorably than male employees and subjected to sexual harassment. Early in her career, Ms. Lanham was

3

subjected to lewd sexual jokes by one of her managers during calls placed to her while she was in New York City.  *Complaint, ¶¶48-49*.  This manager would advise Ms. Lanham that he desired "female candidates only," who were preferably "pissed off divorced women."  *Id., ¶50*.  This lasted for five years with the manager, before he was demoted and Ms. Lanham no longer had to report to him.  *Id., ¶51*.  When Ms. Lanham attempted to report his conduct to one of Defendant's other managers, she was immediately shut down as the manager steered the conversation to another topic.  *Id., ¶¶53-55*.

As she advanced within Defendant, Ms. Lanham was provided more placements and, thus, exposed to more managers within Defendant to whom she had to report.  *Complaint, ¶56*.  One such manager was Steven Gerhart, Defendant's Vice President of Human Resources.  Mr. Gerhart often would become hostile towards Ms. Lanham during their conversations, threatening her position within the company with reminders that hew as the one that allowed to get her paid.  *Id., ¶57*.  Mr. Gerhart found Ms. Lanham to be unfriendly at times, prompting him to ask her whether "she ever had a real orgasm" while Ms. Lanham was in New York City.  *Id., ¶¶58-59*.  This comment came from the person who was supposed to be administering human resources functions within the company.

Ms. Lanham's work environment became more hostile with Defendant's hire of Todd Rosa.  Ms. Lanham frequently had to interact with Mr. Rosa when he was promoted to management in Defendant in 2017.  *Complaint, ¶63*.  During their conversations throughout 2017 and 2018, Mr. Rosa would make comments about how he liked to drink and needed sex to get through his days.  *Id., ¶64*.  On one occasion in October 2017, Ms. Lanham recalls receiving a call from Mr. Rosa, while she was in New York City, when he stated that he "really needed a drink and a BJ" (in reference to a blowjob), which Ms. Lanham was consistently subjected to during her

4

conversations with him. *Id., ¶¶66-67.* Mr. Rosa even commented on Ms. Lanham being the type of "girl that will do anything" when they were discussing candidates, which comment was repeated in a sexually suggestive manner to Ms. Lanham. *Id., ¶68.* Mr. Rosa also felt it appropriate to refer to Ms. Lanham as his "Sunshine," an improper nickname for a female employee. *Id., ¶69.* If Ms. Lanham ever threatened to report Mr. Rosa's conduct to upper management, he threatened that he could always bring in another recruiter to replace her, which deterred her from making such reports. *Id., ¶¶70-71.* Mr. Rosa's improper comments about the needs for sex and blowjobs continued until Ms. Lanham reported the conduct and was ultimately terminated for lodging her complaint. *Id., ¶90.*

When Ms. Lanham was at Defendant's National Sales Meeting in January 2018, an event held for employees of Defendant, she was approached at one point by one of Defendant's directors, who told her that her hair looked as though "she had just had sex." *Complaint, ¶77.* This caused extreme embarrassment to Ms. Lanham. *Id., ¶78.*

Then, on July 14, 2018, Ms. Lanham received text messages from one of Defendant's employees she had met while at the sales meeting. *Complaint, ¶79.* Although innocuous at first, the text messages became wildly inappropriate, telling Ms. Lanham that he: really "wanted to have sex with [her]"; was attracted to her from day one; thought she was a "cougar"; wanted to know if she was single; "always wanted to fuck [her]"; and was a "really horny guy for [her]." *Id., ¶¶82-86.* Next, the employee sent a picture of his erect penis to Ms. Lanham, coupled with text messages that the picture was just for her and that he thought she was "so sexy." *Id., ¶¶87-88.* Ms. Lanham did not respond to the text messages.

Based on this incident and the prior incidents set forth above, Ms. Lanham's health began to suffer and she began treating with doctors in New York City to help with the effect of the work

environment Defendant was subjecting her to.

## C.     Defendant's Retaliation Against Ms. Lanham

Although she had previously attempted to report the inappropriate work environment on other occasions to manager to no avail, Ms. Lanham gathered the courage to make sure her voice was heard in August 2018.  The first complaint was to Dave Cavanagh, with whom Ms. Lanham discussed the conduct to which she was subjected.  *Complaint, ¶¶103-04.*  While Mr. Cavanagh initially appeared to take the complaint seriously, no follow up was had after he cut the conversation off because he had to board an airplane.  *Id., ¶105.*

Instead of any follow up, the treatment of Ms. Lanham became even worse within Defendant.  For example, Mr. Gerhart was hostile towards Ms. Lanham during an August 31, 2018 conversation about a placement, during which Mr. Gerhart warned Ms. Lanham that he was the "man" who approved her pay when she questioned about why he spoke to her in a manner in which he did not speak to male employees.  *Complaint, ¶¶107-09.*  At the next available opening to lodge her complaints in an email exchange with Mr. Gerhart on or about October 16, 2018, in which she advised that she needed to tell him certain things he should know about, Mr. Gerhart wholly failed to respond to her request.  *Id., ¶¶112-13.*

It was not until October 17, 2018 that Ms. Lanham finally had an opportunity to report the conduct she experienced to Greg Mack, another one of Defendant's managers. *Complaint, ¶¶115-17.*  However, even after detailing the conduct, including the picture of the erect penis, Mr. Mack brushed Ms. Lanham off, even laughing at the fact that she received a "dick pic."  *Id., ¶118.*  Mr. Mack told Ms. Lanham that she should calm down, take a walk around New York City, and that they would address the complaint the following day when he was in his office.  *Id., ¶¶119-20.*  Mr. Mack did not follow up.  *Id., ¶121.*

6

When Mr. Mack failed to follow up with Ms. Lanham, she then made a complaint to yet another manager, Mark Sanicki, on October 18, 2018 about her experiences with Defendant. *Complaint, ¶122.*    Mr. Sanicki told Ms. Lanham that he would escalate the issue to human resources. *Id., ¶¶123-24.*

After filing her complaints with Defendant's managers, Ms. Lanham was blatantly retaliated against.  Initially, the retaliation started with Defendant failing to provide her with recruitment requests and not properly communicating with her to perform her job. *Complaint, ¶¶127-29.*  As well, Defendant failed to fully pay Ms. Lanham for her work and dropped candidates who were in their final rounds with Defendant, presumably to deprive her of income. *¶¶130-32.*  Defendant also began bringing in other recruiters to serve the territories that Ms. Lanham had been serving for years, being told that her openings were "on hold" so that her recruitment efforts should cease.  *¶¶134-35.*  As a result of the filing of her internal complaint, Ms. Lanham was immediately disengaged and deprived of opportunities that she had at the time and previously would have had as evidenced in years prior.  *¶¶145-48.*

On November 26, 2018, Ms. Lanham filed a complaint in New York County Supreme Court.  *Complaint, ¶149.*  Subsequently, on December 14, 2018, Mr. Gerhart told Ms. Lanham that Defendant was going to "suspend business" with her until the "current litigation can be satisfactorily resolved," leaving her with a select few recruits in process to finalize.  *¶157.*  Ms. Lanham responded that she intended on continuing to work for Defendant on openings provided to her.  *¶160.*  Then, on December 24, 2018, Defendant advised Ms. Lanham that she should provide no further candidates on any of their openings and did not provide her with additional work since that time.  *¶¶162-63.*

7

## STANDARD OF REVIEW

"When deciding Rule 12(c) motions for judgment on the pleadings, a court employs the standard that applies to motions to dismiss a complaint under Rule 12(b)(6)." *Walker v. Sankhi*, 494 F. App'x 140, 142 (2d Cir. 2012). "Thus, a court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the non-movant." *Id*. "To survive a Rule 12(c) motion, [a plaintiff's] 'complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Johnson v. Rowley*, 569 F.3d 40, 44 (2d Cir. 2009) (citations omitted).

With these principles in mind, Defendant's motion to dismiss should be denied.

## ARGUMENTS

### POINT I

### THE COURT SHOULD NOT TAKE JUDICIAL NOTICE OF THE DOCUMENTS SUBMITTED BY DEFENDANT ON ITS MOTION BECAUSE THEIR AUTHENTICITY IS CALLED INTO QUESTION

As a preliminary matter, it is important to address the documents that Defendant's counsel frivolously seeks to introduce for the Court to take judicial notice of. Except for the Complaint, none of the documents should be considered by the Court.

Federal Rule of Evidence 201(b) states, in relevant part, that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Such notice may only be taken at the request of a party if "the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2).

In this case, nowhere does Defendant provide the Court with the necessary information to take judicial notice of any of the documents submitted. Indeed, all the documents relied upon by

Defendant are submitted by Defendant's counsel – through some unidentified and unsworn to document (i.e. not a declaration or affirmation) – who has no first-hand knowledge of the facts of the case, thereby constituting pure hearsay.  For this reason alone, the documents should not be considered.  Assuming, *arguendo*, such documents may be considered by the Court, it is respectfully submitted that Ms. Lanham have the ability to cross-examine Defendant's counsel about the documents submitted, such as the reasons those documents were selected, how they were obtained, why certain search terms were used instead of others, why they are relevant and how they can be authenticated.

In any event, with regard to the documents themselves, they, again, are not subject to judicial notice, or relevant, for the reasons set forth below:

1.  Exhibit B – Ms. Lanham's purported "LinkedIn profile" – contains no hyperlink or website address demonstrating where the document was obtained from; does not indicate what date it was printed; is not a true copy of Ms. Lanham's profile if pulled up on LinkedIn; does not set forth how the document is relevant; and does not establish, as a matter of law, that Ms. Lanham was an independent contractor of Defendant.

2.  Exhibit C – Ms. Lanham's purported "Fee Schedule and Guarantee" – contains no information as to how this document was obtained; is preposterously submitted by Defendant's counsel without indicating how he has first-hand knowledge of such information; no discovery has taken place establishing same; Ms. Lanham's name appears nowhere on the document; does not set forth how the document is relevant; and does not establish, as a matter of law, that Ms. Lanham was an independent contractor of Defendant.

3.  Exhibit D – purported documents for National Recruitment Network, LLC – contains no information as to how this document was obtained; does not set forth how the document is relevant; and does not establish, as a matter of law, that Ms. Lanham was an independent contractor of Defendant.

4.  Exhibits E and F – purported documents for Ann Grogan & Associates Inc. and Ann Grogan & Associates, Inc. of Tampa Bay – contains no information as to how these documents were obtained; Ms. Lanham's name appears nowhere on the documents; does not set forth how the documents are relevant; and do not establish, as a matter of law, that Ms. Lanham was an independent contractor of Defendant.

9

5. Exhibit G – a purported Google search for "Ann Grogan Manhattan" – contains no information as to how this document was obtained; sets forth no reasons that the search term was used or whether other search terms were used with the results (perhaps because they contained unfavorable information to Defendant); does not set forth how the document is relevant; and does not establish, as a matter of law, that Ms. Lanham was an independent contractor of Defendant.

6. Exhibit H – a purported LinkedIn search for "Ann Grogan" – contains no information as to how this document was obtained; sets forth no reasons that the search term was used or whether other search terms were used with the results (perhaps because they contained unfavorable information to Defendant); does not set forth how the document is relevant; and does not establish, as a matter of law, that Ms. Lanham was an independent contractor of Defendant.

7. Exhibit I – a purported New York Department of State Search for "Ann Grogan" – contains no information as to how this document was obtained; does not identify whether certain options were used when searching the site, which allows for "Active Only" or "All" for "Status Type," and "Begins With," "Contains" or "Partial" for "Search Type"; does not set forth how the document is relevant; and does not establish, as a matter of law, that Ms. Lanham was an independent contractor of Defendant.

In sum, there is no basis for the Court to take judicial notice of any of the documents submitted by Defendant's counsel because their authenticity has not been established, nor has their relevance as they are not mentioned in the Complaint.  Defendant's attempt to litigate the employee/independent contractor issue on a motion to dismiss has no basis in law.  Since the documents Defendant requests the Court take judicial notice of – except for the Complaint – are all subject to reasonable dispute, they should not be considered by the Court on the motion to dismiss.

**POINT II**

**THE COMPLAINT ALLEGES THAT DEFENDANT EXERTED SUFFICIENT CONTROL OVER MS. LANHAM TO ESTABLISH AN EMPLOYMENT RELATIONSHIP**

As set forth above, Defendant seeks to introduce disputed documentation to attempt to establish that Ms. Lanham was an independent contractor as a matter of law.  Since the documents

are disputed, the Court cannot make such a determination as a matter of law and, as such, Ms. Lanham has properly alleged plausible claims for relief as an employee of Defendant.

The important distinction as to whether Ms. Lanham was an employee or independent contractor in this case relates to the statute of limitations. If Ms. Lanham is deemed an employee of Defendant, she can rely on acts that occurred three years prior to the date of the filing of the Complaint (*N.Y. Exec. Law § 296; CPLR 214(2); N.Y.C. Admin. Code § 8–502(d)*), whereas if she is deemed an independent contractor, she can rely on acts that occurred after April 12, 2018 under the NYSHRL. *See N.Y. Exec. Law § 296-d.*

"Under the NYSHRL, whether a worker is an employee or an independent contractor requires application of the common law of agency." *Fowler v. Scores Holding Co.*, 677 F. Supp. 2d 673, 679 (S.D.N.Y. 2009). The United States Supreme Court set forth thirteen considerations for determining whether a hired party is an independent contractor under the common law of agency in *Community for Creative Non-Violence v. Reid,* 490 U.S. 730 (1989), with the greatest emphasis being placed on "the extent to which the hiring party controls the manner and means by which the worker completes her assigned tasks." *Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111, 112 (2d Cir. 2000).

In this case, the Complaint alleges that Defendant exercised control over the manner and means by which Ms. Lanham completed her assigned tasks, such as: (a) dictating when she was required to perform and complete work; (b) directing her to work on holidays and weekends to complete tasks; (c) mandating that she provide weekly reports to Lumenis for possible candidates to hire; (d) answering questions about each potential candidate whenever requested by Defendant; (e) knowing Defendant's managers' schedules so that she could be available for interviews with candidates; (f) conducting phone interviews herself on behalf of Defendant; and (g) participating

11

in sales and training meetings with management of Defendant.  *See Complaint, ¶¶25-42.*

"It is by now well settled that a determination that an employer-employee relationship exists may rest upon evidence that the employer exercises either control over the results produced or over the means used to achieve the results.'"  *Scott v. Massachusetts Mut. Life Ins. Co.*, 86 N.Y.2d 429, 433 (N.Y. 1995) (citation omitted).  As held in *Fowler*, *supra*,

> At the motion to dismiss stage … the Court need only assess whether the plaintiff has alleged sufficient facts to support a facially plausible claim for relief under the NYSHRL.  Whether [a plaintiff] was, as a matter of law, an employee or an independent contractor, cannot be conclusively determined on the face of the Complaint.

*Fowler*, 677 F. Supp.2d at 680; *see also Banks v. Corr. Servs. Corp.*, 475 F. Supp. 2d 189, 198 (E.D.N.Y. 2007) ("Whether Plaintiff was an employee or an independent contractor cannot be determined on the face of the Complaint.").

With respect to the claims under the NYCHRL, as set forth above, sufficient facts are alleged to support an employment relationship between Ms. Lanham and Defendant.  In any event, even if Ms. Lanham were not an employee of Defendant, she is still entitled to protections under the NYCHRL because independent contractors receive protections under the NYCHRL if they are "natural persons" who "carry out work in furtherance of an employer's business enterprise." *N.Y.C. Admin. Code § 8-102(5).*

Based on the foregoing, it is respectfully submitted that the issue of the employee/independent contractor relationship is not properly a determination to be made on Defendant's motion to dismiss.

<u>POINT III</u>

**THE COMPLAINT ALLEGES PLAUSBILE CLAIMS FOR
<u>RELIEF UNDER THE NYSHRL</u>**

Ms. Lanham's First and Second Causes of Action in the Complaint are under the NYSHRL

for sexual harassment/hostile work environment and retaliation.  *Complaint, ¶¶166-187.*

**A.    Jurisdiction Under the NYSHRL is Proper Because the Complaint Alleges
<u>Discriminatory Conduct That Affected Ms. Lanham in New York</u>**

Claims filed under the NYSHRL cover "acts of discrimination that occur within New York

State, regardless of the residency status of the parties."  *Int'l Healthcare Exch., Inc. v. Glob.*

*Healthcare Exch., LLC*, 470 F. Supp.2d 345, 362 (S.D.N.Y. 2007).  "An out-of-state employer's

discriminatory conduct falls within section 296 if it affects the 'terms, conditions, or privileges of

employment ... within New York.'"  *Id.* (citation omitted).

In the Complaint, Ms. Lanham alleges that she is a New York resident who primarily

worked for Defendant while in New York City.  *Complaint, ¶¶10, 13.*  Ms. Lanham further alleges

in the Complaint that the terms and conditions of her employment with Defendant affected her in

New York, including: (a) treating with doctors as of July 18, 2018 in New York City for the

conduct she was enduring while working for Defendant, which treatment continues (*id., ¶¶92-92*);

(b) being told to work on Christmas while in New York City (*id., ¶26*); (c) being asked by Steven

Gerhart whether "if she ever had a real orgasm" while she was in New York City (*id., ¶¶58-59*);

and (d) being told to "calm down" and take a walk around New York City after she reported to a

manger that she had been sent a picture of a penis from an employee of Defendant (*id., ¶¶118-19*).

Furthermore, all the retaliation by Defendant against Ms. Lanham took place while she was in New

York City, thereby affecting her in New York.

In *Int'l Healthcare*, *supra*, the Court denied a motion to dismiss a complaint filed under

13

the NYSHRL because the plaintiff worked in New York City and the alleged discrimination by the defendant had its effects there.  *Int'l Healthcare*, 470 F. Supp.2d at 362.  The Court held that "[b]ecause the allegedly discriminatory acts affected the terms and conditions of her employment at her workplace in New York City, her claims against [the defendants] are within the scope of the NYSHRL."  *Id*.

Similarly, in *Curto v. Medical World Comm., Inc.,* 388 F. Supp.2d 101 (E.D.N.Y.2005), the plaintiff, who worked for a corporation in New Jersey, alleged in her complaint that the terms and conditions of her employment affected her in her home office in New York.  The court held that such allegations in the complaint were sufficient to withstand a motion to dismiss because it alleged discriminatory acts in New York.  *Id.* at 106-07.

Here, Ms. Lanham alleges that she is a New York resident, performed work for Defendant in New York, and endured conduct by Defendant while she was in New York that caused her to seek medical treatment in New York.  Based on the foregoing precedent, Ms. Lanham has clearly stated a claim under the NYSHRL so that Defendant's motion should be denied.

**B.   The Complaint Alleges Plausible Claims for Sexual Harassment and Retaliation Under the NYSHRL**

Defendant argues that the Complaint should be dismissed because the conduct alleged after April 12, 2018 was not severe or pervasive.  In making this argument, Defendant, again, is flawed in assuming that Ms. Lanham can only recover for conduct that occurred after that date because she was an independent contractor of Defendant, an issue that cannot be determined on the motion papers.  Furthermore, the Complaint alleges severe and pervasive conduct that occurred after April 12, 2018, making the claims actionable.

A plaintiff states a claim for relief under the NYSHRL when she alleges that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently

severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Forrest v. Jewish Guild for the Blind,* 3 N.Y.3d 295, 310 (N.Y. 2004) (*quoting Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)).  "[I]t is well settled in this Circuit that even a single act can meet the threshold if, by itself, it can and does work a transformation of the plaintiff's workplace. *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002); *see also Bermudez v. City of New York*, 783 F. Supp.2d 560, 594 (S.D.N.Y. 2011) (holding that a single "gross incident of sexual harassment" can create a hostile work environment if it is severe).

In *Bermudez*, *supra*, the claims involved a single incident with one of the defendant's where she "'opened her legs and told Lieutenant Stroman come eat' in response to Stroman stating that he was 'very hungry.'" *Bermudez*, 783 F. Supp.2d at 593–94.  The plaintiff claimed that the action and comment were in response to a defendant "'st[icking] out his mouth simulating oral sex." *Id*. at 594.  Although this was the only incident alleged in the plaintiff's complaint regarding that defendant, the Court held that a "reasonable jury could conclude that the October 2007—a gross incident of sexual harassment—was sufficiently severe so as to create a hostile work environment," and, as a result, denied the defendant's motion to dismiss. *Id.*

Just as in *Bermudez*, in this case, Defendant's employee sending the picture of his erect penis with comments to Ms. Lanham about how he wanted to have sex with her is sufficiently severe, in and of itself, to create a hostile work environment.

However, the Complaint here contains much more.  In the Complaint, Ms. Lanham alleges that managers within Defendant asked her whether she "ever had a real orgasm" and would constantly make comments to Ms. Lanham about needing sex to get through a day. *Complaint, ¶¶58, 64*.  The Complaint alleges that one of Defendant's managers, Todd Rosa, made comments about needing a blowjob to get through the day and told Ms. Lanham that she was "the type of girl

that will do anything." *Id., ¶¶66-68.*  Mr. Rosa made these comments to Ms. Lanham continually throughout their relationship, stating in 2017 and ending when Ms. Lanham lodged her internal complaint in October 2018.  On another occasion, Ms. Lanham was told by yet another male manager that her hair looked as though "she just had sex." *Id., ¶77.*

These facts are objectively both severe and pervasive to withstand a motion to dismiss for harassment and a hostile work environment under the NYSHRL.

Defendant seems to believe it is insulated from liability because Ms. Lanham did not make Defendant aware of the conduct to which she was subjected.  This argument expressly ignores the allegations in the Complaint that Ms. Lanham attempted to report such conduct on a regular basis to Defendant, only for her complaints to be dismissed or to have her job threated if she elevated it further in the company.  *Complaint, ¶¶54-55, 70-71, 94-97, 103-05, 110-21.*  Then, when Ms. Lanham's complaint was finally heard, instead of taking corrective action, Defendant gradually took placements away from Ms. Lanham and, after she filed her complaint in court, terminated Ms. Lanham.  *Id., ¶¶125-133, 157.*

Critically, Defendant also ignores the fact that the Complaint alleges that Ms. Lanham never received any document from Defendant advising her what she should do if she was the victim of discrimination or harassment in the workplace so that she should know how to properly lodge a complaint in such a situation.  *Complaint, ¶101.*  Indeed, the failure to provide such a policy to Ms. Lanham by October 9, 2018 constitutes a *per se* violation of the law by Defendant. *See N.Y. Lab. Law § 201-g.*

Notably, Defendant does not argue in its papers that Ms. Lanham has failed to state a claim for relief for retaliation under the NYSHRL, which, in any event, is clearly alleged as Ms. Lanham engaged in a protected activity by complaining to Defendant about the sexual conduct to which

she was subjected, only to be terminated shortly thereafter, establishing a causal connection between her protected activity and the adverse employment action. *See, e.g., Winston v. Verizon Servs. Corp.*, 633 F. Supp.2d 42, 50 (S.D.N.Y. 2009) ("[T]o establish a prima facie case of retaliation, an employee must show [1] participation in a protected activity known to the defendant; [2] an employment action disadvantaging the plaintiff; and [3] a causal connection between the protected activity and the adverse employment action.").

Based on the foregoing, it is respectfully submitted that Plaintiff has properly pled plausible claims for relief under the NYSHRL.

## POINT IV

### THE COMPLAINT ALLEGES PLAUSBILE CLAIMS FOR RELIEF UNDER THE NYCHRL

Ms. Lanham's Third and Fourth Causes of Action in the Complaint are under the NYCHRL for sexual harassment/hostile work environment and retaliation. *Complaint, ¶¶188-206.*

### A.   Jurisdiction Under the NYCHRL is Proper Because the Complaint Alleges Discriminatory Conduct That Impacted Ms. Lanham in New York

Similar to the NYSHRL analysis, claims under the NYCHRL focus on whether a complaint alleges facts to support that discriminatory conduct by a defendant impacted a plaintiff in New York City.

"In order to state a claim under the City Human Rights Law, a plaintiff must allege that he was discriminated against by the defendant within New York City." *Duffy v. Drake Beam Morin*, 1998 WL 252063, at *11 (S.D.N.Y. May 19, 1998). "Under the NYCHRL the impact of the employment action must be felt *by the plaintiff* in NYC." *Vangas v. Montefiore Med. Ctr.*, 823 F.3d 174, 183 (2d Cir. 2016) (emphasis in original); *see also Salvatore v. KLM Royal Dutch Airlines*, 1999 WL 796172, at *16 (S.D.N.Y. Sept. 30, 1999) ("To determine the location of the

discrimination, courts have looked to the location of the impact of the offensive conduct.").  The only way a defendant can succeed on a motion to dismiss an NYCHRL claim is the establish "that there is no possibility that there was an impact in New York."  *Chin v. CH2M Hill Companies, Ltd*., 2012 WL 4473293, at *3 (S.D.N.Y. Sept. 28, 2012).

As set forth above, there are numerous allegations in the Complaint of the impact Ms. Lanham felt in New York City, including the comments that were made to her by Defendant while she was in New York City and that she has been treating with professionals in New York City because of the conduct to which she was subjected by Defendant.  As well, Ms. Lanham was retaliated against while in New York City, clearly impacting her there.

In *Int'l Healthcare*, *supra*, the Court, for similar reasons it denied the defendant's motion to dismiss under the NYSHRL, it denied the motion defendant's motion to dismiss the NYCHRL claims because the "alleged discriminatory conduct,  though originating outside of the city, affected [the plaintiff] in New York City, and thus may form the basis of a cause of action under NYCHRL."  *Int'l Healthcare*, 470 F. Supp.2d at 362-63.

In *Chen-Oster v. Goldman, Sachs & Co.*, 251 F. Supp.3d 579 (S.D.N.Y. 2017), the plaintiff pleaded that she traveled and worked for the defendant in New York City, served the defendant's clients in New York City and had a meeting in New York City to discuss her career with the defendant.  *Id*. at 594.  These facts, which are far less than are asserted in the instant Complaint as to impact, were held to be "sufficient, on a motion to dismiss, to plausibly suggest that [the plaintiff] felt [the defendant's] alleged retaliation in New York."  *Id*.  As a result, the Court denied the motion to dismiss because it was "plausible that [the plaintiff] felt [the defendant's] alleged retaliation, at least in part, in New York."  *Id*. at 595.

The Court in *Chin*, *supra*, simplified the NYCHRL analysis even further, noting that in the

18

complaint the "Plaintiff worked and the impact of Defendants alleged conduct may have been felt in New York. That is enough." *Chin*, 2012 WL 4473293, at *4. The Court in *Chin* found that "[r]egardless of whether Plaintiff performed work in New York City of her own volition and not at the direction of LTD—and regardless of whether Defendants meet their burden on a motion to dismiss (let alone whether Plaintiff could ultimately prove an impact in New York)—Defendants on this record have failed to show that there is no possibility that there was an impact in New York." *Id.* at *3.

In sum, the Complaint alleges that Defendant's conduct impacted her in New York City and Defendant has not, on its motion to dismiss, established that there was absolutely no impact of its conduct in New York. As a result, denial of Defendant's motion to dismiss is warranted.

**B.    The Complaint Alleges Plausible Claims for Sexual Harassment and Retaliation Under the NYCHRL**

For claims under the NYCHRL, a plaintiff does not have to establish that conduct was "severe or pervasive." Instead, the standard for a plaintiff to maintain a sexual harassment claim under the NYCHRL is to show that she "has been treated less well than other employees because of her gender." *Garcia v. New York City Health & Hosps. Corp.*, 2016 WL 4097850, at *4 (S.D.N.Y. July 26, 2016) (citation omitted).

Just as Ms. Lanham establishes a claim under the NYSHRL based on the severe and pervasive conduct to which she was subjected, she also establishes her claim under the NYCHRL as the "standard for maintaining a hostile work environment claim is lower under the NYCHRL." *Bermudez*, 783 F. Supp.2d at 579. In addition to the facts supporting Ms. Lanham's NYSHRL claims demonstrating that she was treated less favorably than males – who were part of Defendant's culture where they believed it was appropriate to send pictures of their penis and refer to blowjobs and sex with female in the company – Ms. Lanham was also called "Sunshine"

19

repeatedly by Mr. Rosa and threatened by Mr. Gerhart that he was the "man" who approved her pay.  These facts support that Ms. Lanham was treated less favorably than males within Defendant, supporting her claim for harassment and a hostile work environment under the NYCHRL.

Furthermore, although, again, not argued in Defendant's papers, the Complaint plausibly alleges a claim for retaliation under the NYCHRL, which is more lenient than the standard under the NYSHRL as there does not need to be a materially adverse employment action, but just a retaliatory act that would "reasonably likely to deter a person from engaging in protected activity." *Alexander v. Possible Prods., Inc.*, 336 F. Supp.3d 187, 196 (S.D.N.Y. 2018) (citation omitted).

Based on the foregoing, sufficient allegations of sexual harassment and retaliation are alleged in the Complaint to maintain the claims under the NYCHRL.

## CONCLUSION

Based on the foregoing, Defendant's motion to dismiss should be denied, together with such other and further relief as the Court deems just and proper.

Dated: July 19, 2019
      Syosset, New York

                          Respectfully submitted,
                          **LAW OFFICES OF YALE POLLACK, P.C.**

                          By: */s/ Yale Pollack*
                              Yale Pollack, Esq.
                          *Attorneys for Plaintiff*
                          66 Split Rock Road
                          Syosset, New York 11791
                          (516) 634-6340